UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          CASE NO. 8:13-cr-237-T-23TBM

DUANE CRITHFIELD and
STEPHEN DONALDSON, SR.
_____/

**ORDER**

The defendants move (Doc.121) to suppress evidence, the United States responds (Doc. 133), and the defendants reply (Doc. 145).  The Magistrate Judge conducted a hearing on December 22, 2014, and on February 11, 2015, issued his report (Doc. 190) recommending denial of the motion.  The defendants object (Doc. 193) to the report and recommendation, the United States responds (Doc. 196) to the objections, and the defendants reply (Doc. 203).  The defendants' objections (Doc. 193) are **OVERRULED**, the report and recommendation (Doc. 190) is adopted, and the motion to suppress (Doc. 121) is **DENIED**.

The defendants move (Doc. 128) to dismiss the superseding indictment or, in the alternative, move *in limine* to exclude evidence supporting the "unlawful business deductions tax fraud theory" that the defendants attribute to the superseding indictment.  The United States responds in opposition. (Doc. 135)  As the United States observes, "[T]he motion is largely predicated on an erroneous interpretation of the elements of the offenses charged in the Superseding Indictment . . . ." (Doc. 135

at 4)  Further, as the United States observes, "The facts and procedural posture of [*United States v. Klein*, 247 F.2d 908 (2nd Cir. 1957)] highlight the difference between a conspiracy to defraud and a substantive tax offense . . . ."  (Doc. 135 at 5)  For the reasons explained in the United States' response, the motion (Doc. 128) is **DENIED**.

In conjunction with the motion (Doc. 128) resolved in the preceding paragraph, the defendants move (Doc. 129) to dismiss based on the applicable limitation, move *in limine* with respect to certain taxpayers' returns, and move for a *James* hearing on the admissibility of co-conspirator statements.  For the reasons stated by the United States, the motion (Doc. 129) is **DENIED**.  However, regardless of the resolution of any other issue, the Wartime Suspension of Limitations Act will not toll or suspend any otherwise applicable limitation in this action.

The defendants' motion (Doc. 166) for oral argument on Docs. 128 and 129 is **DENIED**, and the defendants' motion (Doc. 186) for oral argument on Docs. 169, 171, and 175 is **DENIED**.

The defendants move (Doc. 169) *in limine* "to preclude any testimony and/or evidence attributing to the defendants any investment losses that may have occurred with any BPP clients . . . ."  (Doc. 169 at 1)  The defendants advance several arguments, including that the clients' investments were guided by the clients and the clients' financial advisors and that the nature and success of the clients' investments is an irrelevant, possibly a prejudicial, distraction.  The United States responds (Doc. 178) with several claims, including that proving the entire "flow" of money

through the alleged "multi-step scheme" is an intrinsic part of the United States' proof of the conspiracy and that "proof demonstrating that monies or funds were diverted from the BPP clients to the conspirators . . . is relevant evidence of the conspirators' motive . . . ." (Doc. 178 at 14)  Several distinctions, arguably pertinent to this issue, are not considered by the parties, including the difference between proof of the flow of, or the route of, money in an enterprise; proof of the amount of gain or loss in some component of, or in the whole of, an enterprise; and proof of gain or loss to one or more of the participants in an enterprise.  Proof of the route, the amount, or the result differ typically in probative value and prejudicial effect, depending on the circumstances.  This motion (Doc. 169), perhaps premature, is **DENIED WITHOUT PREJUDICE** to renewal at trial, at which time a more complete record will assist in formulating a precise and correct disposition.

   The defendant Donaldson moves (Doc. 91) *in limine* to preclude any evidence "regarding the lawfulness" of two legal opinions acquired in connection with the defendants' "BPP" enterprise (or, enterprises, as the defendants insist), the *bona fides* of which are challenged in the superseding indictment.  Also, the defendant appears to request a ruling that precludes any evidence that the legal opinions have not "identified lawful tax strategies."  In the response, the United States disavows any "challenge" to "the lawfulness of the legal opinions from the perspective of the drafting attorneys," but asserts the intent to challenge defendants' roles in "the procurement, creation and promotional use of the letters . . . ." (Doc. 93 at 2)  Also

in the response, the United States iterates an earlier explanation that "an attorney's opinion letter based upon the misrepresentations of another may not be labeled a 'sham' or 'fraudulent' letter when considering the conduct of the drafting attorney but could be considered as such when evaluating the conduct of the person making the material misrepresentations." (Doc. 93 at 3) The United States' explanation and assurance is understandable and sufficient without the need to craft an order *in limine*. Although the United States must act consistent with the representations, no further order is necessary or helpful. The motion (Doc. 91) is **DENIED**. Any remaining issue on this subject partakes of mere semantic quibbling, fostered by the use of imprecise and inartful descriptive terms (e.g., what is a "lawful" opinion letter?)

The defendants move (Doc. 171)[*] to dismiss the indictment and assert that the United States' refusal to immunize James Duggan, the attorney who "authored" the sixty-six page legal opinion on the enterprise the defendants label "BPP-II." The defendants' motion invokes, among other things, an order (Doc. 165) denying the defendants' motion for a judicial grant of immunity to Duggan. The defendants claim that, at pain of dismissal of the indictment, the United States must immunize

---

[*] Counsel for the defendant states in the motion (Doc. 171) that "for the convenience of the Court" the defendant will incorporate by reference an argument advanced in another paper (that, the motion states, the "Court has kindly read"). Quite transparently, this familiar device (familiar because attempted by others) of "incorporation" is employed not for the convenience of the court (convenience is hardly served by the need to search elsewhere for an argument or for authority) but as an expedient to evade the page limitation of the Local Rules. Counsel should refrain from this practice. If more space is needed, ask for an enlargement (which, given the amount of verbosity, repetition, and the like that appear in counsel's papers, will probably be denied). In sum, counsel should not employ the available devices (for example, inserting 1.7 or 1.9 spaces between lines rather than 2.0 spaces, shrinking the margins, tightening the space between letters, using excessive footnotes, using a tighter font, etc.) in an effort to gain an advantage. The Local Rules attempt to place all parties on "an equal footing."

Duggan, who with the advice of counsel invokes his Fifth Amendment privilege against self-incrimination but who simultaneously harbors irreplaceable information putatively essential to the defendants' ability to defeat the indictment. Beginning with a reference to the defendants' response to the United States bill of particulars, the defendants explain the thrust of their demand for either immunity for Duggan or dismissal of the indictment:

> Of course, the natural next step in investigating and responding to the government's particulars was to determine whether the <u>author</u> of the HTD opinion shared the government's <u>speculation</u> that the defendants implemented the HTD opinion <u>contrary</u> to the limits of his opinion. That has been accomplished, and, as expected (given the incredibly diligent efforts of the defendants to maintain compliance with this program), Mr. Duggan can, with great authority and personal insight, inform the government, the Court, and, if necessary, the jury, precisely how misinformed the government is with its speculative and uninformed theory of prosecution.

(Doc. 171 at 4, ¶ 12) (emphasis in original).

In response (Doc. 177), the United States identifies five premises (Doc. 177 at 5–11) on which the defendants' dismissal motion proceeds but which the United States argues are mistaken. Further, the United States observes that the pertinent history places Duggan in a "precarious position" and that Duggan's assertion of the Fifth Amendment is neither "frivolous or unfounded." The core of the United States' position on immunity is summarized as follows:

> Duggan is simply not an essential or exculpatory witness. Defendant Donaldson has previously argued that he did not ever receive the complete HTD opinion letter on the BPP strategy but received only a summary eight-page letter. Doc. 125 at 13. Defendant Crithfield did apparently receive the complete letter. *Id.* In either case, the various letters are available to the defense.

> Unless Duggan wrote the letters using a secret code that only he can decipher, the defendants have failed to show how Duggan's testimony is essential. The government and the defendants (and the jury) can compare the evidence and testimony admitted at trial to the confines of the letter.
>
> Moreover, insiders who worked at the various affiliated entities — Alliance, FIC, CIC, Offshore Trusts, Foster & Dunhill, Westminster Hope and Turnberry, etc. — are available (some with immunity) to explain precisely how the BPP strategy was promoted and implemented. The defendants are likewise able to testify about the manner in which they attempted to comply in good faith with the law and the HTD opinion letter.
>
> Nothing about Duggan's testimony relating to his understanding of whether the defendants and their compatriots and employees complied with the letter is unique or essential.

(Doc. 177 at 13–14)  In other words, Duggan's legal opinion (which the law assesses objectively and not subjectively from Duggan's vantage) says what it says, and the history of the implementation is what it is; the jurors, employing the historical facts they find, will compare the one to the other.  Assuming (without deciding) that a witness, including but not limited to Duggan, is otherwise qualified to opine in respect to the opinion letter or the implementation or both, no particular qualified witness's opinion is "unique and "essential" such as to require the dismissal of this indictment in the event the witness asserts the Fifth Amendment and the United States declines immunity.  The motion (Doc. 171) is **DENIED**.

  The earlier order (Doc. 164) adopting the parties' stipulation about "the Salty Brine case" is **VACATED** because the order paraphrases rather than repeats exactly the parties' stipulation.  The (perhaps imprecise) paraphrasing was intended neither as an expansion nor as a restriction of the parties' stipulation.  The parties' stipulation

(Doc. 76) is **ADOPTED**, the agreed motion *in limine* is **GRANTED**, and accordingly:

   a. Counsel will not elicit, directly or indirectly, any testimony or other evidence during direct examination of the any experts, or other witnesses, that would inform the jury as to any judicial rulings made in the Salty Brine case.

   b. Counsel will not elicit, directly or indirectly, such testimony or other evidence on re-direct or cross examination of any witness without first raising the matter with the Court, and obtaining a ruling thereon from the Court.

Donaldson's motion (Doc. 180) for permission to file a reply to the United States' response (Doc. 177) to the motion to dismiss (Doc. 171) is **DENIED**.

Donaldson's motion to strike (Doc. 188) is **DENIED**.

The defendants' "Motion to Enforce and Clarify . . . " (Doc. 175) is referred to the magistrate judge for disposition of that part of the motion that requests enforcement or clarification of the magistrate judge's earlier order or that bears on discovery (the district judge will dispose of any part of the motion unresolved by the magistrate judge's order).

ORDERED in Tampa, Florida, on April 24, 2015.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE