**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                           Case No. 8:13-cr-237-T-23TBM

**DUANE CRITHFIELD and
STEPHEN DONALDSON, SR.,**

    **Defendants.**
_____/

**SECOND
REPORT AND RECOMMENDATION
ON RESTITUTION**

THIS MATTER is before the undersigned for issuance of a report and recommendation on Jonathan David Christenbury, M.D.'s **Motion for Restitution** (Doc. 389). In support, Christenbury filed a Supplement to Motion for Restitution (Doc. 443) and Restitution Proffer (Doc. 457). Defendant Stephen Donaldson, Sr., filed a response in opposition to Christenbury's motion. (Doc. 395). Defendant Duane Crithfield adopted Donaldson's response. *See id.* Other pleadings related to Christenbury's request for restitution have also been filed.[1] A hearing was held December 8, 2017.[2]

---

[1] The government and defense counsel submitted a Joint Notice of Filing List of Witnesses and Exhibits to be Considered in Determining Restitution in this Case (Doc. 438), Christenbury filed documents related to "IRS penalty" (Doc. 459), and Defendants filed a Motion to Strike and/or Deny Christenbury's Restitution Claims (Doc. 461) outright for want of adequate proof and purported violation of discovery orders.

[2] At the hearing, Christenbury introduced a copy of the confidential settlement agreement resolving his suit against the Locke, Lord Bissell firm reflecting a gross settlement amount to Christenbury of $3 million. (*See* Sealed Doc. 463-1). Post hearing, Defendants

**I.**

By his motion, Christenbury argues that he is entitled to $6,118,851.00 in restitution, pursuant to 18 U.S.C. § 3663 and § 3663A, because he was directly and proximately harmed by the course of the 18 U.S.C. § 371 conspiracy charged in Count One of the Superceding Indictment and of which Defendants were convicted.[3] Christenbury maintains that Defendants "fleeced" him of $2,500,000.00.[4] In addition to that money purportedly stolen, he includes the following in the total restitution amount: $2,947,945.00 interest on that principal sum; $450,000.00 for an IRS penalty, together with $421,939.00 in interest owed since January 1, 2006; and $445,359.00 in attorney's fees for the work of three law firms. Christenbury acknowledges, however, that he received $646,393.00 in net proceeds from litigation against the Locke Lord Bissell firm (herein "Lord Bissell"). While the government has not undertaken to pursue this restitution, Christenbury represents that the government does not oppose him receiving restitution. (Doc. 389).

By his unverified supplement, Christenbury reduces the total amount of restitution sought to $5,925,916.50, withdrawing all claims for attorneys fees and costs except for his

---

filed a Motion to Reconsider (Doc. 465) the undersigned's denial of Donaldson's *ore tenus* motion to compel all relevant settlement agreements and tax returns, and a Motion to Strike and/or Disallow Christenbury Restitution Claims Due Process and Notice Violations (Doc. 467) related to the late notice of Christenbury's claim for restitution. Christenbury filed another declaration pertaining to various settlement amounts. (Doc. 472).

[3]Christenbury attaches a sworn declaration attesting to these amounts.

[4]This sum is composed of $500,000 paid to Fidelity Insurance for business risk insurance and $2 million used to fund a trust with First Fidelity Trust.

current counsel, for whom he now seeks $26,807.51. By this new computation, he provides a reduced net proceeds amount received in the Lord Bissell lawsuit of $420,775.[5] (Doc. 443).

By his Restitution Proffer (Doc. 457) and Notice of Filing Additional Materials Provided to Defendants Re: Tax Penalty (Doc. 459), Christenbury advises that the IRS penalty for failing to file Form 3520 for the tax year 2002 was ultimately negotiated down and the actual total penalty was $437,500.00.[6] He also asserts that prejudgment interest and fees billed by his current attorney's firm are recoverable.

Defendants counter that Christenbury is not entitled to restitution. In brief, they argue that tax fraud is the only fraud charged by the Superceding Indictment and the sole victim of that fraud is the IRS. While Christenbury claims restitution for investment losses – for investments placed in trust accounts and/or variable life insurance and annuity devices – Defendants maintain those losses are not the direct or proximate result of the tax fraud alleged. They also contend that interest and attorney's fees are not compensable as restitution. (Doc. 395).

Defendants provide further argument on the restitution amounts in another filing. (*See* Doc. 461). Therein, they argue that the $500,000 payment for business risk insurance may not

---

[5] Counsel represents this new sum was calculated after consultation with Christenbury's tax attorney and tort counsel who brought the Lord Bissell suit, and is the "approximate net effect" of the Lord Bissell settlement. (Doc. 443 at 2).

[6] Attached are documents Christenbury claims support the IRS penalty and his payment thereon. This penalty arises from Christenbury's failure to timely file IRS Form 3520, Annual Return to report Transactions with foreign Trusts and .... By this material, the IRS proposed to assess against Christenbury a civil penalty in the amount of $700,000.00. Christenbury claimed reasonable cause for the failure to timely file the return based on his not receiving the form from First Fidelity Trust in a timely manner and the neglect of his advisors. Per the proffer, the penalty was negotiated down as indicated. (Doc. 457-3, 4 and 5).

3

be assessed as restitution because the charged crime asserts tax fraud not insurance fraud (or investment fraud), and the loss of this premium is not directly related to the tax fraud. Similarly, they argue that the IRS penalty related to Christenbury's failure to timely file IRS Form 3520 for the tax year 2002, as prescribed by Title 26, is unrelated to the charged crime and not subject to restitution. They contend that Christenbury's response to the IRS regarding this penalty was a scam on the IRS, and, in any event, there is no record evidence that Christenbury actually paid this penalty. They also attach documents which they contend support their position that First Fidelity Trust or its agent timely filed a form 3520A and owed no further duty to Christenbury, and Christenbury and his attorney were timely advised and well aware of his obligation to file a Form 3520. As for the Lord Bissell settlement amount, Defendants urge it remains inadequately documented and there are no records confirming the new sum Christenbury claims to have received net of fees and costs and taxes purportedly paid. Finally, regarding the Jung & Sisco firm's claim for fees, they urge there is no showing the fees were incurred during participation in the investigation or prosecution of the offense or attendance at proceedings.[7]

---

[7]Attached to Defendants' Motion to Reconsider (Doc. 465) is a copy of another settlement agreement in a suit Christenbury brought in Texas against his attorney Theodore Lustig. By that settlement, Lustig agreed to pay him $2 million in exchange for a release and dismissal of that suit and a lawsuit pending in the Eastern Caribbean Supreme Court in Nevis against First Fidelity Trust, *et al.* (Doc. 465-1). A second settlement agreement with Lustig and his firm in the amount of $150,000.00 is also attached. (Doc. 465-2). The particulars of these matters are not otherwise explained. Christenbury addresses these settlement amounts in his most recent declaration, stating that the $2 million settlement never occurred and he netted nothing significant in the other two small settlements. (Doc. 472).

**II.**

A district court may order restitution only if a statute empowers it to do so. *United States v. Dickerson*, 370 F.3d 1330, 1335 (11th Cir. 2004). Pursuant to 18 U.S.C. § 3556, a district court is required to order restitution as part of a defendant's sentence under the Mandatory Victim's Restitution Act ("MVRA"), 18 U.S.C. § 3663A. The parties agree that the MVRA governs the matter of restitution.

The MVRA provides that a district court shall order restitution to a victim as part of the defendant's sentence for offenses against property under Title 18, including any offense committed by fraud or deceit. 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). The MVRA defines a victim as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered, including in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). The government bears the burden to establish the restitution amount and

causation by a preponderance of the evidence.[8] 18 U.S.C. § 3664(e); *United States v. Futrell,* 209 F.3d 1286, 1290 (11th Cir. 2000).

To establish direct and proximate cause, "the government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal connection between the conduct and the loss is not too attenuated (either factually or temporally)." *United States v. Robertson,* 493 F.3d 1322, 1334 (11th Cir. 2007) (quoting *United States v. Cutter*, 313 F.3d 1, 7 (1st Cir. 2002)). The "[d]efendant's conduct need not be the sole cause of the loss, but any subsequent action that contributes to the loss, such as intervening cause, must be directly related to the defendant's conduct. The causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable." *United States v. Gamma Tech Indus., Inc.,* 265 F.3d 917, 928 (9th Cir. 2001) (citations omitted).

---

[8]Christenbury brought his claim for restitution, not the government. The government has exhibited little interest in pursuing his claim. Defendants have complained about procedural improprieties related to the government's failure to timely advise probation (and Defendants) of the amounts subject to restitution as required by statute. (*See* Doc. 467). I find no merit to Defendants' claim of a due process or statutory violation.

As for Christenbury pursuing his own remedy, it does not appear he is barred from doing so. While I find no controlling authority on point, at least one circuit court of appeals has held that "the statute setting the procedure for awarding restitution under the MVRA, 18 U.S.C. § 3664, also 'authorizes the district court to allow a victim to prove up its own claim for restitution when the court deems it appropriate to do so.'" *U.S. v. Eyraud*, 809 F.3d 462, 467 (9th Cir. 2015) (quoting *Gamma Tech Indus., Inc.,* 265 F.3d at 924); *see* 18 U.S.C. § 3664(e) (stating "[t]he burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.").

**III.**

Christenbury's Motion for Restitution should be denied. As explained below, neither Christenbury nor the government demonstrate the losses alleged were directly and proximately caused by Defendants' conduct in the course of the charged conspiracy.

When a defendant is convicted at trial, the scope of the conspiracy is defined by the indictment for purposes of restitution. *United States v. Adams*, 363 F.3d 363, 366 (5th Cir. 2004). Here, the Superceding Indictment at Count One charges that:

> defendants herein, did knowingly and willfully combine, conspire, confederate and agree together with others known and unknown to the grand jury to defraud the United States out of money and property and by impeding, impairing, obstructing, and defeating, through dishonest and deceitful means, the lawful functions of the [IRS] in the ascertainment, computation, assessment, and collection of federal income taxes.

(Doc. 47 at 4, ¶ 7). As described by the Court in its Order on findings of fact and conclusions of law:

> According to the superseding indictment, to achieve the unlawful objects of the conspiracy Crithfield, Donaldson, and the unindicted conspirators promoted, marketed, and implemented a Business Protection Plan, consistently designated BPP, which was purportedly a lawful, insurance-based tax shelter but which was actually a fraudulent mechanism to defeat federal income tax.

(Doc. 365 at 1).

> Under the BPP, a closely held business paid a premium to an insurance company for a purported insurance policy and deducted from the business's taxable income an amount equal to the premium. ... At the end of the year ..., the enterprise transferred to the business owner's control nearly all of the insurance premium – untaxed....

(Doc. 365 at 3–4).

7

Thus, by the Court's findings, the gravamen of the conspiracy charge relates to Defendants' design, implementation, and promotion of a scheme for business owners to avoid income taxes by way of false and fraudulent business expense deductions. Allegations of insurance fraud were incidental to the tax fraud. So too are the tax consequences arising from gains and losses to companies or individuals employing the BPP strategy's insurance and trust devices.

As indicated, Christenbury now alleges losses of:

(1) $500,000 he paid Fidelity Insurance for business risk insurance;

(2) $2 million he used to fund a trust with First Fidelity Trust;

(3) $2,947,945 in interest on this $2.5 million;

(4) $437,500 for the IRS penalty, together with $421,939 in interest owed since 1/1/2006; and

(5) $26,807.51 in attorney's fees for his current counsel.

After careful consideration, I find that neither the purported loss related to the $2.5 million used by Christenbury to fund the trust with First Fidelity Trust in Nevis and the purchase of business risk insurance under the BPP scheme, nor the loss claimed in connection with the monies paid on the IRS penalty, were the direct and proximate result of the tax fraud alleged in Count One. While perhaps recoverable by other means, Christenbury is not entitled to restitution on these sums or an award of prejudgment interest under the MVRA.

The record demonstrates that the loss of the $2.5 million would not have occurred but for the conduct underlying Defendants' conspiracy to defraud. The evidence reflects that Donaldson had a direct role in promoting the offshore trust and convincing Christenbury to

purchase business risk policies for the purpose of generating a fraudulent business tax deduction. However, the evidence fails to demonstrate that Christenbury's loss of the $2.5 million was directly and proximately caused by Defendants' criminal conduct in conspiring to defraud the IRS. To establish direct and proximate cause, Christenbury (or the government) must show not only that this loss would not have occurred but for the conduct underlying the conspiracy charge, but also that the causal connection between that conduct and the loss of the $2.5 million was not too factually or temporally attenuated. *See Robertson,* 493 F.3d at 1334.

Here, the "loss" of the $2.5 million is too factually or temporally attenuated. Christenbury accuses Defendants of stealing these monies, however it is not shown that the loss of the $2.5 million was a result of Defendants' theft (or more importantly, their scheme to defraud). Rather, on the record before the Court, it is unclear what happened to these monies and why Christenbury was unable to regain control of them. While I accept Christenbury's representation that he has not received any portion of these monies back, more than his or his counsel's urging is necessary to establish that Defendants stole or fleeced these funds. Further, the available evidence suggests there were or could have been many intervening events between Defendants' conduct underlying the charged conspiracy and the loss of the $2.5 million at some unknown time and by some unspecified means. Any such intervening events cannot be found to be reasonably foreseeable consequences of and not too attenuated from Defendants' scheme to defraud the IRS. *See United States v. Collins*, 854 F.3d 1324, 1335–36 (11th Cir. 2017) (revisiting proximate causation in the MVRA context in terms of foreseeability); *Robertson,* 493 F.3d at 1335 (providing that a loss is proximately caused by a defendant if it is reasonably foreseeable as a natural and probable consequence of the defendant's criminal conduct). In these

9

circumstances, it simply has not been demonstrated by a preponderance of the evidence that Defendants' conduct in the course of the tax fraud scheme in Count One directly and proximately caused Christenbury's loss.[9] As a result, Christenbury is not entitled to restitution under the MVRA for these monies, and his claim for prejudgment interest on this loss fails as well.

As for the IRS penalty and interest thereon, the record reflects that as a consequence of Christenbury's failure to timely file IRS Form 3520 for the tax year 2002, he was assessed a penalty in the amount of $700,000.00 by the IRS. Ultimately, he paid the sum of $437,500 to settle the dispute. He now seeks an order of restitution for this sum together with interest thereon since January 2006. Because, this penalty is in no way causally connected with the criminal conspiracy alleged in Count One and Christenbury fails to prove otherwise by a preponderance of the evidence, he is not entitled to restitution under the MVRA for these monies.

IRS Form 3520 is the "Annual Information Return to Report Transactions with Foreign Trusts and Receipts of Certain Foreign Gifts." According to the IRS, the informational form is used by U.S. citizens to report transactions with foreign trusts, distributions from foreign trusts, and receipt of large gifts from foreign persons. Here, Christenbury failed to timely file the form in connection with his formation of the trust at First Fidelity Trust in Nevis. In discussions with the IRS, he blamed his failure to do so on his CPA advisor(s) and/or First Fidelity Trust for failing to provide him a copy of the Form 3520A. For whatever reasons, it appears the IRS agreed to the reduced sum. As indicated, Defendants urge that Christenbury, under the law and

---

[9]Christenbury's reliance on *United States v. Washington*, 434 F.3d 1265 (11th Cir. 2006) to support his assertion that he was directly and proximately harmed as a result of the conduct underlying the conspiracy charge is not persuasive.

10

facts, was solely responsible for filing this form and, contrary to his contentions before the IRS, First Fidelity Trust, through its agent, did timely file a Form 3520A and advise Christenbury's counsel of the filing. On this motion, it is unnecessary to resolve the factual differences urged by the parties. It is enough to conclude that this penalty was not directly or proximately caused by Defendants' conspiracy to commit tax fraud based on the use of false and fraudulent business expense deductions. Neither the penalty nor interest on this sum should be awarded as restitution.

Finally, on these conclusions, Defendants' challenges to the Jung & Sisco's firm's fees are not wholly without merit. Under the circumstances presented, Christenbury has not demonstrated entitlement to these fees under the MVRA and his claim for restitution related to legal fees and costs should be denied.[10]

---

[10]On these conclusions, it is unnecessary to reach the factual dispute over Christenbury's right to actually recover additional monies given his settlement with the Lord Bissell firm for $3 million. The most recent settlement statement filed shows $2 million of this sum was paid to Christenbury. (Doc. 472 at 8). During this litigation, he has claimed two different amounts as his net recovery from this payout. *Compare* (Doc. 389 at 4) *with* (Doc. 443 at 1). He agrees that he may not obtain a double recovery, but he evidences uncertainty as to what exactly he recovered and what he may seek here by way of additional recovery. From my perspective, arriving at the correct amount of his recovery from that suit is not possible on this record and would require additional discovery and arguments. This would inevitably delay the entry of judgment in this matter, and I do not recommend it be done. In this regard, it merits noting that a court is not obligated to order restitution if it finds that "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B).

## IV.

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that Christenbury's **Motion for Restitution** (Doc. 389) be **DENIED** as set forth herein.

It is **RECOMMENDED** further that Defendants' Motion to Strike and/or Deny Christenbury Restitution Claims (Doc. 461) and Motion to Strike and/or Disallow Christenbury Restitution Claims Due Process and Notice Violations (Doc. 467) be **DENIED**.

                                      Respectfully submitted on this 28th day of December 2017,

                                      THOMAS B. McCOUN III
                                      UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES OF EXPEDITED OBJECTION PERIOD

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service may constitute a waiver of the issues raised herein and shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02.

Copies furnished to:
Honorable Steven D. Merryday, Chief U.S. District Judge
Counsel of Record